# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 10/10/2019 12:34 PM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez,Deputy Clerk

Case 2:21-cv-02536-PSG-PLA   Document 1-3   Filed 03/23/21   Page 2 of 14   Page ID #:8

Assigned for all purposes to: Spring Street Courthouse, Judicial Officer: Stephen Goorvitch

LIEBER & GALPERIN, LLP
YURY GALPERIN, ESQ., CSB# 232305
PATRICE J. HENSLEY, ESQ., CSB# 321134
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
Telephone: (424) 325-6388
Facsimile: (424) 389-7038


Attorneys for Plaintiffs, JANE DOE


## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES – UNLIMITED CIVIL

| | |
|---|---|
| JANE DOE, an individual, | Case No.: 19STCV36396 |
| Plaintiffs, | **COMPLAINT FOR:** |
| vs. | 1. Sexual Battery in Violation of Cal. Civ. Code Section 1708.5 |
| COMPANIA PANAMENA DE AVIACION, a Business organization form unknown; COPA HOLDINGS, a Business organization form unknown; AMIR MIRGHAFFARI, an individual, and DOES 1 through 100, inclusive, . | 2. Gender Violence in Violation of Cal. Civ. Code Section 52.4 |
| | 3. Battery |
| | 4. Assault |
| | 5. Intentional Infliction of Emotional Distress |
| | 6. Ralphs Civil Right Act – Violation of Cal. Civ. Code 51.7 |
| Defendants. | 7. Negligence |

Plaintiff alleges as follows:

## GENERAL ALLEGATIONS

1.      Plaintiff, JANE DOE ("DOE" or "Plaintiff") is an individual over the age of 18, who resides in the State of California, County of Los Angeles. DOE is suing under a pseudonym to protect her privacy.

2.      Plaintiff is informed and believes, and thereupon alleges that, Defendant, COMPANIA PANAMENA DE AVIACION ("CPDA"), is a business organization, form unknown, currently doing business in the State of California, County of Los Angeles.

3.      Plaintiff is informed and believes, and thereupon alleges that, Defendant, COPA HOLDINGS ("CH"), is a business organization, form unknown, currently doing business in the State of California, County of Los Angeles.

4.      Plaintiff is informed and believes, and thereupon alleges that Defendants CPDA and CH (collectively referred to hereinafter as "THE COPA DEFENDANTS") own and operate Copa Airlines (COPA), a common carrier.

5.      Plaintiff is informed and believes, and thereupon alleges that THE COPA DEFENDANTS employ a flight crew responsible for the safe and secure operation of its flights as well as the safety and well-being of its passengers.

6.      Plaintiff is informed and believes, and thereupon alleges that Defendant, AMIR MIRGHAFFARI ("MIRGHAFFARI"), is an individual, place of residence unknown.

7.      The COPA DEFENDANTS and MIRGHAFFARI shall be collectively referred to hereinafter as "Defendants."

8.      At all times herein mentioned, Defendants, and each of them were agents and/or employees and or joint ventures of the other Defendants and were acting within the course and scope of such agency and/or employment and or joint ventures at the time of the claim asserted herein.

9.      Plaintiffs are unaware of the true names and capacities of defendants Does 1 through 100, inclusive, and each of them, and therefore sues such defendants by these fictitious names. Plaintiff will ask leave to amend this complaint to state their true names and capacities when ascertained. Plaintiff is informed and believes, and, on that basis, allege, that each of the defendants named as a Doe was in some manner responsible for the injury and damage suffered by Plaintiff as alleged in this complaint.

10.      On or about October 11, 2017, DOE boarded Copa Airlines flight CM 303 from Los Angeles, California to Panama City, Panama (referred to hereinafter as "the subject flight"), with a valid ticket and sat in her assigned aisle seat. The subject flight was operated by THE COPA DEFENDANTS and was conducted on an aircraft owned, leased, staffed, or otherwise controlled by THE COPA DEFENDANTS.

11.      THE COPA DEFENDANTS were responsible for the training, management, supervision, and/or control of its flight crew aboard the subject flight, including but not limited to the crew's adherence to their own internal standard safety policies and protocol as well as federal policies, regulations, guidelines and standards.

12.      After the cabin was prepared for takeoff, an additional passenger was allowed onto the flight. That passenger, MIRGHAFFARI, was medicated and extremely agitated as he boarded. MIRGHAFFARI was also coughing loudly and frequently upon boarding the flight.

13.      MIRGHAFFARI was seated adjacent to DOE, in the middle seat of DOE's row.

14.      Before the airplane took off, MIRGHAFFARI repeatedly touched and groped / DOE's body parts - her arm, side (near her bra line), shoulder, hand, leg, thigh, and feet - despite DOE making every effort possible to move away and outside of MIRGHAFFARI's reach.

15.      DOE spoke to a member of the flight crew, asking to be moved to another seat prior to take off, advising the crew member that she felt very unsafe and extremely uncomfortable seated next to MIRGHAFFARI due to his odd and unusual behavior. Despite this, the flight crew refused to accommodate her and forced DOE to remain in her seat with no effort to move her.

16.     After the flight was in the air, the flight crew turned off the cabin lights to prepare the cabin as soon as possible for passengers to sleep, as it was nearing midnight.  MIRGHAFFARI immediately put his tray table down and kept it down throughout the rest of the flight, despite the fact that he declined food and drink when offered same by the flight crew.  DOE prepared to go to sleep in her seat.  Before falling asleep, she observed MIRGHAFFARI begin watching the film *Wonder Woman*.

17.     Thereafter, DOE was suddenly awakened in the dark cabin by MIRGHAFFARI still watching the *Wonder Woman* film and now fondling and groping her body parts and rubbing his body against hers and leaning into her body (her arm, shoulder, side-near bra line, hand, thigh, leg, feet), while MIRGHAFFARI proceeded to rub/fondle his crotch area and masturbate, using his lowered tray table to prevent detection.

18.     MIRGHAFFARI continued to physically move himself and his body closer and closer to DOE, invading more and more of her personal space, and touching more and more of her body parts, and to masturbate for the duration of the *Wonder Woman* film, and beyond its ending.

19.     DOE tried to prevent MIRGHAFFARI continued assault, without the assistance of anyone from the flight crew, and to push MIRGHAFFARI off herself and protect herself from his protracted invasion and unwanted fondling of her while he was fondling himself. Yet despite her efforts, and without any assistance of the flight crew nor other passengers, MIRGHAFFARI's molestations and sexual assault continued to DOE's horror and escalating panic with no one aboard helping her.

20.     As DOE continued attempts to keep herself away from MIRGHAFFARI, and keep him from further battering her, he then attempted to get into DOE's seat with her and get on top of DOE.

21.     At this point, terrified for her safety, DOE began loudly calling out for help in attempts to wake people around her. With no sign of assistance from the flight crew, DOE then made her

way to the rear of the plane as fast as possible and woke up the crew, advising them that she had endured a sexual assault by MIRGHAFFARI and she needed help.

22.     The flight crew requested that DOE not say anything about being sexually assaulted. Then, despite the fact that DOE was clearly terrified, the flight attendant walked DOE back to her seat and to MIRGHAFFARI and attempted to confront MIRGHAFFARI in front of other passengers who had heard and seen the commotion and were now awake. MIRGHAFFARI refused to answer several questions posed to him by flight crew, about his actions.  He then offered an incoherent and mumbled response, stating that that it must have been DOE who was the aggressor.

23.     DOE then requested to be moved *again*. She was moved one seat away from MIRGHAFFARI, directly across the aisle, and he was allowed to remain in his original seat, continuing his odd behavior and now terrorizing the woman who was still seated next to him.

24.     DOE was then informed by the flight crew that the flight crew knew, prior to the assault on DOE, that MIRGHAFFARI was due back in the USA immediately upon arrival at the Panama gate, at the demand of the US criminal court system, on other charges he was facing, and that he was not going to be allowed to enter Panama.

25.     When the flight landed, DOE was forced to wait for a lengthy time at the gate without explanation of what was happening, with no idea of how long she'd be detained in Panama, without her luggage or personal effects, without her passport (which was taken by Panama officials), with no food or drink, seated in a plastic chair along with the witness, and directly across from the now restrained MIRGHAFFARI who was snarling threats at DOE.

26.     When DOE finally attempted to return home after nearly one month delay due to her injuries, she was not allowed to fly by THE COPA DEFENDANTS due to her medical distress, panic symptoms and nausea, which were a direct result of DOE's sheer panic about having to board and fly one of the COPA DEFENDANTS' planes and potentially be assaulted again.

## FIRST CAUSE OF ACTION

(Sexual Battery in Violation of Cal. Civ. Code Section 1708.5 – By Plaintiff Against Defendant MIRGHAFFARI)

27.     Plaintiff realleges and incorporate herein by reference the allegations contained in paragraphs 1 through 26, inclusive, as though set forth fully herein.

28.     Cal. Civ. Code Section 1708.5(a) states that (a) A person commits a sexual battery who does any of the following: (1) Acts with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results. (2) Acts with the intent to cause a harmful or offensive contact with another by use of his or her intimate part, and a sexually offensive contact with that person directly or indirectly results. (3) Acts to cause an imminent apprehension of the conduct described in paragraph (1) or (2), and a sexually offensive contact with that person directly or indirectly results.

29.     By engaging in the course of conduct described above, MIRGHAFFARI committed acts of sexual battery in violation of Cal. Civ. Code Section 1708.5. MIRGHAFFARI willfully, maliciously and intentionally subjected DOE to the forceful, harmful and offensive touching of her "intimate parts" as defined in Cal. Civ. Code Section 1708.5(d) without DOE's consent.

30.     As a direct and proximate result of MIRGHAFFARI's conduct as alleged herein, DOE has suffered physical injury, humiliation, embarrassment, mental and emotional distress and anxiety, in an amount according to proof at trial.

31.     As a direct and proximate result of MIRGHAFFARI's conduct as alleged herein, DOE has suffered economic damages in an amount according to proof at trial.

32.     The above-described conduct of MIRGHAFFARI was willful, wanton and malicious. MIRGHAFFARI acted with conscious disregard of Plaintiff's rights and feelings. Plaintiff is informed and believes and thereupon alleges that MIRGHAFFARI intended to cause fear,

physical injury and/or emotional injury to Plaintiff. Therefore, Plaintiff is entitled to punitive and exemplary damages from MIRGHAFFARI in an amount according to proof at trial.

## SECOND CAUSE OF ACTION

(Gender Violence in Violation of Cal. Civ. Code Section 52.4 – By Plaintiff Against Defendant MIRGHAFFARI)

33.    Plaintiff realleges and incorporate herein by reference the allegations contained in paragraphs 1 through 32, inclusive, as though set forth fully herein.

34.    Cal. Civ. Code Section 52.4 defines gender violence as (1)  One or more acts that would constitute a criminal offense under state law that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, committed at least in part based on the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction. (2)  A physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

35.    As alleged in detail above, MIRGHAFFARI committed acts of gender violence upon DOE by using and threatening to use physical force against DOE based, at least in part, on DOE's gender.

36.    As a direct and proximate result of MIRGHAFFARI's conduct as alleged herein, DOE has suffered physical injury, humiliation, embarrassment, mental and emotional distress and anxiety, in an amount according to proof at trial.

37.    As a direct and proximate result of MIRGHAFFARI's conduct as alleged herein, DOE has suffered economic damages in an amount according to proof at trial.

38.    The above-described conduct of MIRGHAFFARI was willful, wanton and malicious. MIRGHAFFARI acted with conscious disregard of Plaintiff's rights and feelings. Plaintiff is informed and believes and thereupon alleges that MIRGHAFFARI intended to cause fear,

physical injury and/or emotional injury to Plaintiff. Therefore, Plaintiff is entitled to punitive and exemplary damages from MIRGHAFFARI in an amount according to proof at trial.

39.     Plaintiff has incurred, and will continue to incur, attorneys' fees in the prosecution of this action and therefore demands such reasonable attorneys' fees and costs as set by the Court.

### THIRD CAUSE OF ACTION

(Battery – By Plaintiff Against Defendant MIRGHAFFARI)

40.     Plaintiff realleges and incorporate herein by reference the allegations contained in paragraphs 1 through 39, inclusive, as though set forth fully herein.

41.     As described in detail above, MIRGHAFFARI acted with intent to make a harmful and offensive contact with DOE's person.

42.     As further described in detail above, MIRGHAFFARI did, in fact, make a harmful and offensive contact with DOE's person.

43.     At all times relevant hereto, DOE found the contact by MIRGHAFFARI to be offensive. At no time did DOE consent to any acts by MIRGHAFFARI alleged herein.

44.     DOE was physically harmed as a result of MIRGHAFFARI's conduct.

45.     As a direct and proximate result of MIRGHAFFARI's conduct as alleged herein, DOE has suffered physical injury, severe emotional distress, humiliation, embarrassment, anxiety, economic harm, and other consequential damages in an amount according to proof at trial.

46.     The above-described conduct of MIRGHAFFARI was willful, wanton and malicious. MIRGHAFFARI acted with conscious disregard of Plaintiff's rights and feelings. Plaintiff is informed and believes and thereupon alleges that MIRGHAFFARI intended to cause fear, physical injury and/or emotional injury to Plaintiff. Therefore, Plaintiff is entitled to punitive and exemplary damages from MIRGHAFFARI in an amount according to proof at trial.

**FOURTH CAUSE OF ACTION**

(Assault – By Plaintiff Against Defendant MIRGHAFFARI)

47.     Plaintiff realleges and incorporate herein by reference the allegations contained in paragraphs 1 through 46, inclusive, as though set forth fully herein.

48.     As described in detail above, MIRGHAFFARI acted with intent to cause DOE apprehension of an imminent harmful and offensive contact with DOE's person.

49.     As further described in detail above, DOE was, in fact, placed in great apprehension of imminent harmful and offensive contact with DOE's person.

50.     At no time did DOE consent to any of the acts of MIRGHAFFARI as alleged above.

51.     MIRGHAFFARI's conduct, as described above, caused DOE to be apprehensive that MIRGHAFFARI would subject her to further intentional invasions of her right to be free from offensive and harmful contact and demonstrated that at all times relevant hereto MIRGHAFFARI had a present ability to subject DOE to such intentional offensive and harmful contact.

52.     As a direct and proximate result of MIRGHAFFARI's conduct as alleged herein, DOE has suffered physical injury, severe emotional distress, humiliation, embarrassment, anxiety, economic harm, and other consequential damages in an amount according to proof at trial.

53.     The above-described conduct of MIRGHAFFARI was willful, wanton and malicious. MIRGHAFFARI acted with conscious disregard of Plaintiff's rights and feelings. Plaintiff is informed and believes and thereupon alleges that MIRGHAFFARI intended to cause fear, physical injury and/or emotional injury to Plaintiff. Therefore, Plaintiff is entitled to punitive and exemplary damages from MIRGHAFFARI in an amount according to proof at trial.

## FIFTH CAUSE OF ACTION

(Intentional Infliction of Emotional Distress – By Plaintiff Against All Defendants)

54.    Plaintiff realleges and incorporate herein by reference the allegations contained in paragraphs 1 through 53, inclusive, as though set forth fully herein.

55.    Defendants knew or should have known that, by undertaking the actions alleged above, they would subject Plaintiff to a sexual assault, and would cause Plaintiff severe emotional distress.

56.    As a proximate result of Defendants' failure to exercise due care as described above, Plaintiff has, in fact, been subjected to severe emotional distress, mental anguish, humiliation, pain, and physical distress.

57.    Defendants committed the aforementioned acts maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof at trial.

## SIXTH CAUSE OF ACTION

(Ralphs Civil Right Act – Violation of Cal. Civ. Code 51.7 – By Plaintiff Against All Defendants)

58.    Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 57, inclusive, as though set forth fully herein.

59.    Cal. Civ. Code Section 51.7 states "all persons within the jurisdiction of this state have the right to be free from any violence, intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51…or because another person perceives them to have one or more of those characteristics.

60.     At all times mentioned herein, Plaintiff had the right to be free from any violence or intimidation by threat of violence, committed against her person on account of her sex.

61.     As alleged above, each Defendant subjected Plaintiff to violence, and/or intimidation by threats of violence on account of her sex and/or acted to aid, incite and/or conspire with the other Defendant(s) to deny Plaintiff her right to be free from any violence or intimidation by threat of violence, committed against her person on account of her sex.

62.     In doing so, each Defendant violated the civil rights of Plaintiff as set forth in the Ralph Civil Rights Act, which is codified in Cal. Civ. Code Section 51.7.

63.     As a direct and proximate result of Defendants' unlawful conduct as described above, Plaintiff has suffered economic harm and other consequential damages, in an amount according to proof at trial.

64.     The aforementioned conduct by Defendants was willful, wanton and malicious. At all relevant times Defendants acted with complete disregard of Plaintiff's rights and feelings. Each Defendant also acted with the knowledge of, or with reckless disregard for, the fact that their conduct was certain to cause injury and/or humiliation to Plaintiff. Plaintiff is therefore entitled to recover punitive damages in an amount according to proof at trial.

65.     In addition, Plaintiff is entitled to statutory damages pursuant to Cal. Civ. Code Section 52(b), including actual and exemplary damages.

66.     Pursuant to Cal. Civ. Code 52(b)(3), Plaintiff has incurred, and will continue to incur, attorneys' fees in the prosecution of this action and therefore demands such reasonable attorneys' fees and costs as set by the Court.

## SEVENTH CAUSE OF ACTION

(Negligence – By Plaintiff Against THE COPA DEFENDANTS)

67.     Plaintiff realleges and incorporate herein by reference the allegations contained in paragraphs 1 through 66, inclusive, as though set forth fully herein.

68.     By virtue of their status as common carriers, THE COPA DEFENDANTS owed a heightened duty of care to Plaintiff.

69.     THE COPA DEFENDANTS, and each of them, were breached said duty of care by allowing MIRGHAFFARI to board the flight while intoxicated, in allowing MIRGHAFFARI to sexually assault Plaintiff despite being advised of MIRGHAFFARI's actions, and in causing DOE to suffer unattended.

70.     Based on the negligence of THE COPA DEFENDANTS, and each of them, DOE was harmed in an amount according to proof not less than $2,000,000.00.

WHEREFORE, Plaintiff prays for judgment against Defendants, both individually and jointly as set forth below:

1.  For general damages according to proof;

2.  For special damages according to proof;

3.  For punitive damages as allowed by law and in an amount according to proof;

4.  For statutory damages;

5.  For interest as allowed by law;

6.  For attorney's fees;

7.  For costs of suit incurred herein; and

8.  For such other and further relief as the Court deems just and proper.

DATED: October 10, 2019

LIEBER & GALPERIN, LLP

Yury Galperin
Attorneys for Plaintiff,
JANE DOE